IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **FRANCISCO CANTERIA**, on behalf of himself and all other similarly situated employees, known and unknown, | Civil Action |
| Plaintiff, | No. |
| v. | |
| **LOUIE ROUSSEL RACING STABLE**, an Illinois business entity, and **LOUIE J. ROUSSEL, III**, individually, | JURY DEMAND |
| Defendants. | |

## COMPLAINT

By and through his attorneys of record and on behalf of himself and all other similarly situated employees, known and unknown, the plaintiff, FRANCISCO CANTERIA, complains of the defendants, LOUIE ROUSSEL RACING STABLE, an Illinois business entity, and, LOUIE J. ROUSSEL, III, individually. Pleading hypothetically and in the alternative, the plaintiff alleges as follows:

### I.  INTRODUCTION

1.     This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as a result of the defendants' failure to pay overtime compensation to the plaintiff, and to other similarly situated employees of the defendants (the "Putative Class"). The plaintiff routinely worked in excess of 40 hours per week for the defendants and his hours fluctuated; but the defendants paid him a fixed salary each week no matter how many hours he worked. The defendants violated the FLSA by failing

to pay the plaintiff an overtime premium for the hours he worked in excess of 40 in numerous weeks.

2.      The Putative Class members also routinely worked in excess of 40 hours per week for the defendants and their hours also fluctuated; but, upon information and belief, the defendants also paid Putative Class members a fixed salary each week no matter how many hours they worked.  The defendants violated the FLSA by failing to pay the Putative Class members an overtime premium for the hours they worked in excess of 40 in numerous weeks, and continue this improper payroll practice through the present day.  In Count I, the plaintiff brings claims under Section 216(b) of the FLSA.

3.      In Count II the plaintiff brings supplemental claims under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq*.

4.      In Count III, the plaintiff brings supplemental claim for common law retaliatory discharge.

II.   **THE PARTIES**

5.      The plaintiff is an individual domiciled in Illinois who resides within the Northern District of Illinois.

6.      The defendant, LOUIE J. ROUSSEL, III, is an individual domiciled in Illinois who resides within the Northern District of Illinois.

7.      LOUIE ROUSSEL RACING STABLE is an Illinois business entity (a corporation, limited liability company, general partnership, limited partnership or sole proprietorship) that maintains a registered office in Illinois at 3501 S. Laramie, Cicero, IL 60804.

8.      At all times relevant to this action, the defendants maintained a principal place of business in Illinois at or near 3501 S. Laramie, Cicero, IL 60804.

9.     Upon information and belief, at all times relevant to this action, LOUIE J. ROUSSEL, III held and holds one or more of the following positions relative to LOUIE ROSSEL RACING STABLE: a) sole proprietor; b) partner; c) corporate officer; d) manager; e) member; and/or f) owner.

10.     At all times relevant to this action, LOUIE J. ROUSSEL, III held and holds an ownership interest in LOUIE ROSSEL RACING STABLE.

11.     At all times relevant to this action, LOUIE J. ROUSSEL, III exercised and exercise significant control over LOUIE ROSSEL RACING STABLE's day-to-day affairs including its human resources and payroll function.

12.     At all times relevant to this action, LOUIE J. ROUSSEL, III had and has the power to hire and fire LOUIE ROUSSEL RACING STABLE's employees including, as applicable, the plaintiff and the Putative Class members.

13.     At all times relevant to this action, LOUIE J. ROUSSEL, III had and has the power to set the pay rates of LOUIE ROUSSEL RACING STABLE's employees including, as applicable, the plaintiff and the Putative Class members.

14.     At all times relevant to this action, LOUIE J. ROUSSEL, III had and has the power to determine the manner and method of payment for LOUIE ROUSSEL RACING STABLE's employees (*e.g.* salary, hourly, in cash, by check) including, as applicable, the plaintiff and the Putative Class members.

15.     At all times relevant to this action, LOUIE J. ROUSSEL, III had and has the power to set the work schedules of LOUIE ROUSSEL RACING STABLE's employees including, as applicable, the plaintiff and the Putative Class members.

III.   <u>JURISDICTION AND VENUE</u>

16.     Federal question jurisdiction is conferred on this Court by Section 16(b) of the FLSA and 28 U.S.C. §1331.

17.     Supplemental jurisdiction over the Illinois statutory claims alleged herein is conferred on this Court by 28 U.S.C. § 1367(a).

18.     Venue is proper as the acts or omissions that gave rise to the claims alleged herein occurred within the Northern District of Illinois.

IV.   <u>COLLECTIVE ACTION UNDER THE FLSA</u>

19.     The plaintiff bring this case as an opt-out collective action under the FLSA on behalf of himself and the Putative Class, and in accord with Section 16(b) of the FLSA, the plaintiff has given written consent to bring such an action (attached hereto as **Exhibit A**).

V.   <u>GENERAL ALLEGATIONS</u>

20.     At all times relevant to this action, the defendants were the plaintiff's "employer", within the meaning of Section 3(a) and (d) of the FLSA in that the defendants acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

21.     At all times relevant to this action, the defendants were and are the Putative Class members' "employer", within the meaning of Section 3(a) and (d) of the FLSA in that the defendants acted/act directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

22.     At all times relevant to this action, the defendants were the plaintiff's "employer" within the meaning of Section 3(c) of the IMWL in that the defendants acted directly or indirectly in the interest of the "employer" in relation to the plaintiffs, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

23.     At all times relevant to this action, the plaintiff was an "employee" of the Defendants within the meaning of Section 3(e)(1) of the FLSA in that, among other things, the defendants allowed him to perform work for the defendants' benefit.

24.     At all times relevant to this action, the Putative Class members were and are "employee[s]" of the defendants within the meaning of Section 3(e)(1) of the FLSA in that, among other things, the defendants allowed them to perform work for the defendants' benefit.

25.     At all times relevant to this action, the plaintiffs was an "employee" of the defendants within the meaning of Section 3(d) of the IMWL in that, among other things, the defendants allowed him to perform work for the defendants' benefit.

26.     At all times relevant to this action, the defendants owned and operated, and own and operate, a facility that trains and boards racehorses, commonly known as "Louie Roussel Racing Stable" at or near 3501 S. Laramie, Cicero, IL 60804.

27.     The defendants also operate at other locations within and outside of Illinois, including but not limited to facilities: a) at or near Arlington Park Racecourse; b) at or near Ocala, Florida; and c) at or near Baton Rouge, Louisiana.

28.     For the most part, the plaintiff worked for the defendants at their Arlington Park Racecourse facility.

29.     During the plaintiff's employment, the defendants employed about 13 individuals at their Arlington Park Racecourse facility, and they employed numerous other individuals at their other facilities.

30.     The defendant, LOUIE ROUSSEL RACING STABLE, had gross receipts in excess of $500,000.00 in a) 2012; b) 2013; c) 2014; d) 2015; e) the twelve-month period between and including April 1, 2015, and March 31, 2016; and f) the twelve-month period between and including July 1, 2015, and June 30, 2016.

31.     The defendants' horse training and boarding business had gross receipts in excess of $500,000.00 in a) 2012; b) 2013; c) 2014; d) 2015; e) the twelve-month period between and including April 1, 2015, and March 31, 2016; and f) the twelve-month period between and including July 1, 2015, and June 30, 2016.

32.     At all times relevant to this action, the defendants' horse training and boarding business operated, controlled and/or constituted an "enterprise" within the meaning of Section 3(r) of the FLSA.

33.     During the course of his employment by the defendants, the plaintiff handled goods that moved in interstate commerce including but not limited to nylon ropes and plastic buckets.

34.     During the course of their employment by the defendants, the Putative Class members handled and handle goods that moved in interstate commerce including but not limited to nylon ropes and plastic buckets.

35.     During the course of their employment by the defendants, the plaintiff and the Putative Class members were and, as applicable, are not exempt from the minimum wage and maximum hour provisions of the FLSA.

36.     During the course of his employment by the defendants, the plaintiff was not exempt from the minimum wage and maximum hour provisions of the IMWL.

37.     The plaintiff was employed by the defendants from about May, 2015 through October 24, 2015.

38.     The plaintiff worked as a horse trainer and a stable attendant; and his job duties included:

      a.  training horses;

      b.  feeding, watering brushing and otherwise caring for horses;

      c.  cleaning up after horses, and cleaning the stables and other facilities used by the defendants; and

      d.  odd jobs throughout the workday as assigned by LOUIE J. ROUSSEL, III and the plaintiff's managers including, as the plaintiff knew him, "Daniel."

39.     The Putative Class consists of employees who worked/work as horse trainers and stable attendants, before the plaintiff was hired by the defendants, after the plaintiff was fired by the defendants, and/or during the same time period as the plaintiff worked for the defendants.

40.     At all times during the plaintiff's employment by the defendants, the defendants failed to conspicuously provide notice to the plaintiff and the Putative Class members of their wage and hour rights.

## COUNT I
### (Violation of the FLSA)

41.     The plaintiff re-alleges the foregoing paragraphs.

42. Between about May, 2015, and October 24, 2015, the defendants issued pay stubs to the plaintiff and the Putative Class members that indicated they were paid on "Salary." During most of this period the plaintiff actually worked an average of 60 hours per week for the defendants.

43. More specifically, between about May, 2015 and October 24, 2015, the plaintiff's hours varied from week to week between 56 hours per week and 63 hours per week, but on average he worked about 60 hours per week for the defendants.

44. The defendants failed to track and record the plaintiff's actual hours however; and the defendants failed to list the number of hours the plaintiff worked each week on his pay stubs as the FLSA and relevant regulations require.

45. Where an employer fails to keep accurate payroll records, "Reasonable approximations . . . are appropriate." *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 669 n.2 (7th Cir. Ill. 2010) (citations omitted).

46. Between about May, 2015, and October 24, 2015, the defendants paid the plaintiff a fixed, weekly salary of $1,001.14;[1] and, despite the fact that the actual number of hours he worked each week fluctuated between about 56 and 63, his compensation remained the same.

47. Because of the length of time that the plaintiff was paid a fixed weekly salary, there was a "clear mutual understanding of the parties that the fixed salary [was] compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number,

---

[1] The plaintiff believes the defendants arrived at this amount so that the net amount paid to the plaintiff after taxes each week would be an even $900.00. The plaintiff believes this because the agreement he made with the defendants at the start of his employment was to be paid a net of $900.00 per week. When the plaintiff returned to work on August 3, 2015 after having been injured (see below) the defendants arbitrarily cut his pay for several pay periods in retaliation for his having missed work due to his injuries.

rather than for working 40 hours or some other fixed weekly work period." 29 CFR § 778.114(a).

48.     Because "the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week." *Id*.

49.     The fixed weekly salary that the defendants paid the plaintiff could not have included overtime premiums. If the defendants had paid overtime premiums to the plaintiffs, his weekly compensation would have increased and decreased in a manner that tracked the fluctuation in the number of overtime hours he worked each week, but it did not.

50.     Among other ways, the defendants violated the FLSA by:

a.     failing to pay the plaintiff for the overtime (in excess of 40 in any given workweek) hours he worked at a rate not less than one and one-half times the regular, hourly rate at which he was employed;

b.     failing to provide the plaintiff with pay stubs that listed the number of hours he actually worked each week; and

c.     failing to provide the plaintiff with pay stubs that accurately listed his hourly rate/s of pay.

51.     Upon information and belief, the defendants also violated the FLSA by:

a.     failing to pay the Putative Class members for the overtime (in excess of 40 in any given workweek) hours they worked at rates not less than one and one-half times the regular, hourly rates at which they were employed (in no case less than the IMWL's mandatory minimum[2]);

---

[2] The defendants are effectively estopped from claiming that any employee's regular rate is lower than the Illinois minimum wage rate.

    b.   failing to provide the Putative Class members with pay stubs that listed the number of hours they actually worked/work each week; and

    c.   failing to provide the Putative Class members with pay stubs that accurately listed/list their hourly rate/s of pay.

52.    The defendants' violation of the FLSA was willful in that the defendants were aware or should have been aware of their obligations under the FLSA, but nevertheless attempted to circumvent its provisions.

53.    The defendants failed to take affirmative steps to ascertain their obligations under the FLSA.

54.    As a direct and proximate result of the defendants' violation of the FLSA as described above, the plaintiff was damaged in that he suffered pecuniary loss.

55.    As a direct and proximate result of the defendants' violation of the FLSA as described above, the Putative Class members were damaged in that they suffered pecuniary loss; and the Putative Class members continue to suffer pecuniary loss as a direct and proximate result of the defendants' ongoing violation of the FLSA.

WHEREFORE, the plaintiff, on behalf of himself and the Putative Class, prays for judgment in his favor and against the defendants, and each of them, and for the following relief:

    A.   damages in an amount equal to the unpaid overtime compensation due and owing to the plaintiffs for each hour the plaintiffs worked in excess of 40 in any given week, but for which the defendants failed to pay the plaintiffs at rates not less than one and one-half times the regular rates at which the plaintiffs were employed (in no case less than the IMWL's mandatory minimum);

    B.   statutory liquidated damages as allowed by the FLSA;

    C.   interest on all amounts awarded;

D.  attorneys' fees, together with costs of suit and collection; and

E.  such further relief as may be fair and just in the premises.

## COUNT II
### (Violation of the IMWL)

56.   The plaintiff re-alleges the foregoing paragraphs.

57.   Among other ways, the defendants violated the IMWL by:

a.  failing to pay the plaintiff for the overtime (in excess of 40 in any given workweek) hours he worked at a rate not less than one and one-half times the regular, hourly rate at which he was employed;

b.  failing to provide the plaintiff with pay stubs that listed the number of hours he actually worked each week; and

c.  failing to provide the plaintiff with pay stubs that accurately listed his hourly rate/s of pay.

58.   The defendants were aware or should have been aware of their obligations under the IMWL, but nevertheless attempted to circumvent its provisions.

59.   The defendants failed to take affirmative steps to ascertain their obligations under the IMWL.

60.   As a direct and proximate result of the defendants' violation of the IMWL as described above, the plaintiff was damaged in that he suffered pecuniary loss.

WHEREFORE, the plaintiff pray for judgment in his favor and against the defendants, and each of them, and for the following relief:

A.  damages in an amount equal to the unpaid overtime compensation due and owing to the plaintiff for each hour the plaintiff worked in excess of 40 in any given week, but for which the defendants failed to pay the plaintiff at a rate not less than one and one-half times the regular rate at which the plaintiff was employed;

B.  statutory penalties as allowed by the IMWL;

C.  interest on all amounts awarded;

D.  attorneys' fees, together with costs of suit and collection; and

E.  such further relief as may be fair and just in the premises.

## COUNT III
### (Common Law Retaliatory Discharge)

61.     The plaintiff re-alleges the foregoing paragraphs.

62.     On or about July 28, 2015, the plaintiff was injured in the course and scope of his employment by the defendants.

63.     Specifically, the plaintiff was kicked in the face by a horse and suffered injuries to his person.

64.     On or about July 28, 2015, and thereafter, the plaintiff sought medical treatment for his injuries.

65.     Specifically, after he was injured, the plaintiff was treated at Northwest Community Hospital's emergency room on July 28, 2015; and the plaintiff subsequently received follow up care from various physicians and other medical service providers.

66.     As the result of his injuries, the plaintiff's physicians ordered that he remain off work through August 2, 2015; and accordingly the plaintiff was off work through August 2, 2015.

67.     The plaintiff returned to work on August 3, 2015.

68.     When the plaintiff returned to work, the defendants were angry with him and made derogatory comments; and the defendants told him that they did not believe he should have been off work for as many days as he was.

69. When the plaintiff returned to work, the defendants assigned him to work mostly undesirable jobs – such as cleaning up after horses in the stables – as opposed to the usual rotation of jobs he had been assigned prior to being off work.

70. In about late August, 2015, the plaintiff began to receive medical bills resulting from the treatment of his work related injury.

71. On several occasions between late August, 2015, and October 24, 2015, the plaintiff brought the medical bills to LOUIE J. ROUSSEL, III, and to his manager "Daniel," and requested that they be paid.

72. When the plaintiff gave the medical bills to the defendants in August, September and the early part of October, 2015, the defendants told the plaintiff that they would be paid. However, the defendants did not pay the bills and, as of the date this complaint was filed, the defendants still have not paid the bills.

73. Shortly before October 24, 2015, the plaintiff told his manager, Daniel, that the bills were not being paid like the defendants had promised, and respectfully demanded that they be paid.

74. On October 24, 2015, the defendants fired the plaintiff; and, when the plaintiff asked for an explanation, the defendants refused to provide one.

75. Prior to October 24, 2015, the plaintiff performed his job duties satisfactorily or better.

76. Prior to October 24, 2015, the plaintiff had, in the alternative: a) never been formally reprimanded by the defendants; b) had only been reprimanded for pretextual reasons; or c) had only been reprimanded for minor infractions that would not have resulted in the termination of employment.

77.     The defendants had no legitimate reason to terminate the plaintiff's employment.

78.     The defendants and/or their agents wrongfully terminated the plaintiff's employment in order to retaliate against him for seeking benefits under the Illinois Workers' Compensation Act 820 ILCS 305/1 *et seq.* (the "Act").

79.     When the plaintiff sought benefits under the Act, including but not limited to requesting that the medical bills he had incurred as the result of a work related injury be paid, he was engaging in protected activity under the Act.

80.     The defendant's termination of the plaintiff's employment was willful and wanton, and was enacted with malicious disregard for the plaintiff's rights.

81.     As a direct and proximate result of the defendants' actions, as described above, the plaintiff has sustained damages including but not limited to lost wages.

82.     As a direct and proximate result of the defendants' actions, the plaintiff has sustained damages including but not limited to pain, suffering, anhedonia and emotional distress.

WHEREFORE, the plaintiff prays for judgment in his favor and against the defendants, and each of them, and for the following relief:

A.  make-whole damages including but not limited to reinstatement, back pay and front pay;

B.  compensatory damages;

C.  punitive damages in an amount no less than three times any award of compensatory damages, back pay and front pay;

D.  interest on all amounts awarded; and

E.  such further relief as may be fair and just in the premises.

## JURY DEMAND

The plaintiff demands a trial by jury of all issues set forth herein that are capable of being tried by a jury.

Respectfully submitted,

 /s/Paul Luka
One of the Plaintiff's Attorneys

Paul Luka
Law Office of Paul Luka, P.C.
120 S. State Street, Suite 400
Chicago, IL 60603
(312) 971-7309
paul@lukapc.com

15

# EXHIBIT A

## CONSENT TO BE A PARTY PLAINTIFF

The undersigned hereby authorizes and engages the Law Office of Paul Luka, P.C., to pursue his/her claims for unpaid wages, and other relief, against Louie Roussel Racing Stable, Louie J. Roussel, III, and any other person/s who may have employed him/her in conjunction with said person/s (collectively the "Employers"), and by the signature below the undersigned hereby consents to be a party plaintiff in a lawsuit brought against the Employers on behalf of him/herself and all other similarly situated employees, known and unknown, pursuant to 29 U.S.C. 216(b).

_Francisco Canteria_
Signature

_FRANCISCO CANTERIA_
Print Name